# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 23-191V
UNPUBLISHED

|  |  |
|---|---|
| AMIE LUK,<br><br>                      Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                      Respondent. | Chief Special Master Corcoran<br><br>Filed: March 13, 2025 |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY, for Petitioner.*

*Parisa Tabassian, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On February 9, 2023, Amie Luk filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccination. Petition at 1 (ECF No. 1). The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, and after holding a "Motions Day" hearing on entitlement and damages, I find that Petitioner is entitled to compensation, and I award damages in the amount of **$140,000.00**, **representing actual pain and suffering, plus**

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**$7,872.03 for out-of-pocket unreimbursed expenses, for a total award of $147,872.03.**

## I.    Relevant Procedural History

This case was activated from "pre-assignment review" on April 13, 2023. (ECF No. 10). The parties attempted settlement, but their efforts were unsuccessful, and on January 25, 2024, Petitioner filed a Motion for Ruling on the Record and Brief in Support of Damages ("Mot."). (ECF No. 22). On March 6, 2024, Respondent filed his Rule 4(c) Report and Response to Petitioner's motion ("Resp."). (ECF No. 23). Petitioner filed a supplemental brief ("Reply") on March 6, 2024. (ECF No. 24).

On January 17, 2025, I proposed this case for an expedited hearing on February 28, 2025, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. (ECF No. 27). The parties agreed, and the "Motions Day" hearing took place as scheduled. During the hearing, I orally ruled on Petitioner's entitlement to compensation, and then made an oral damages determination. This Decision memorializes those findings and determinations.

## II.    Relevant Factual History

On June 18, 2022, Petitioner received a Tdap vaccine in her left arm. Ex. 2 at 1; Ex. 5 at 12, 14. Her past medical history was non-contributory and she had no history of left shoulder pain or dysfunction. *See, e.g.,* Ex. 4 at 10-36; Ex. 5 at 7-10; Ex.  At 5-6.

On July 27, 2022 (39 days after vaccination), Petitioner saw family medicine physician's assistant Sulbha Shelare, PA-C, for left arm pain. Ex. 4 at 8. Petitioner reported that her left arm pain began over a month earlier and that she received a Tdap vaccination "a little before the pain started." *Id.* PA Shelare's assessment was left upper arm pain, left shoulder and upper arm injuries, and adverse vaccine effect. *Id.* PA Shelare opined that Petitioner's condition was related to the recent vaccination, and she prescribed a Medrol Dosepak and ordered x-rays. *Id.*

Two days later, on July 29, 2022, Petitioner followed up with family practice physician Vera Oyabure, M.D. Ex. 6 at 4. Petitioner reported that she exercised but did not think her injury was related to that. *Id.* Physical examination revealed decreased active range of motion ("ROM") with lateral raise. *Id.* Dr. Oyabure's assessment was left shoulder muscle injury and anterior deltoid bicep injury, and she recommended physical therapy ("PT") and caution with exercise and the use of extreme weights. *Id.*

2

On September 2, 2022, Petitioner returned to Dr. Oyabure for weight management. Ex. 6 at 3. Petitioner reported that she was training for a competition and adhering to a strict diet to try to lose weight. *Id.* Dr. Oyabure opined that Petitioner was possibly malnourished. *Id.*

A left shoulder CT scan performed on September 22, 2022, revealed a borderline to mildly narrowed coracohumeral interval. Ex. 7 at 7-8. On September 28, 2022, PA Shelare discussed the CT results with Petitioner over a telemedicine visit. Petitioner reported that since receiving the Tdap vaccine, she had pain in her left shoulder. *Id.* PA Shelare's assessment was left shoulder pain, injury, and impingement syndrome, and she ordered an MRI and noted that Petitioner refused PT. *Id.*

On October 18, 2022, Petitioner saw orthopedic surgeon Volkan Guzel, M.D., for left shoulder pain. Ex. 8 at 11. Petitioner reported that her shoulder pain had been present since June 2022 and ranted her pain as 5-6/10. *Id.* Physical examination revealed diffuse left shoulder pain, positive Neer and Hawkins signs, strength of 4/5 to 5/5, and limited ROM due to pain. *Id.* at 11-12. Dr. Guzel's assessment was left shoulder pain and tendinitis, and he administered a subacromial steroid injection, prescribed diclofenac, and ordered PT. *Id.* at 12. X-Rays from the same day revealed no osseous abnormalities. *Id.*

An October 24, 2022, left shoulder MRI revealed a high-grade articular surface partial-thickness tear, centered at the anterior distal supraspinatus tendon, superimposed on thin intrasubstance tears and tendinosis, with a thin full-thickness component to a distal supraspinatus tendon tear possible; fluid in the subacromial subdeltoid bursa; a longitudinal intrasubstance tear and mild tendinosis of subscapularis tendon; and a superior labrum anterior and posterior ("SLAP") tear. Ex. 7 at 5-6.

On October 26, 2022, Petitioner followed up with PA Shelare to review her MRI results. Ex. 4 at 5. Petitioner reported continued left shoulder pain. PA SHelare's assessment was left shoulder pain, tendinitis, and a superior glenoid labrum lesion, and she referred Petitioner to orthopedic surgery. *Id.*

On November 8, 2022, Petitioner followed up with Dr. Guzel to review her MRI results. Ex. 8 at 9. Dr. Guzel's assessment was non-traumatic incomplete tear of the left rotator cuff, and he recommended surgical intervention. *Id.* at 10.

On November 9, 2022, Petitioner sought a second opinion from a different orthopedic surgeon, Eric Sabonghy, M.D. Ex. 9 at 10. Petitioner reported that her left shoulder pain started mid-June 2022, that her pain radiated into her arm, and she rated the pain as severe (8/10). *Id.* Physical examination revealed normal ROM, strength of 3/5 to 5/5, and positive Hawkins, cross arm, impingement, and drop arm special tests. *Id.* at

12-13. Dr. Sabonghy's assessment was acute left shoulder pain, bursitis, rotator cuff strain, and a superior glenoid labrum lesion, and he recommended both surgical and non-surgical treatment options. *Id.* at 14. He prescribed meloxicam and a Medrol Dosepak. *Id.* at 15-16.

On January 10, 2023, Petitioner underwent left shoulder surgery, including the following procedures: arthroscopic rotator cuff tear repair, SLAP repair, extensive intra-articular debridement, and subacromial decompression with large acromioplasty. Ex. 10 at 69-71. Petitioner's final diagnoses were rotator cuff tear, SLAP lesion type 2, subacromial impingement, and spurring. *Id.* Petitioner was prescribed Toradol and Norco for pain during recovery. Ex. 9 at 29.

On January 16, 2023, Petitioner presented for a post-operative follow-up appointment. Ex. 9 at 30. Petitioner reported sharp, aching pain of 4/10 that was improving. *Id.* She was referred to PT. *Id.* at 32.

Between February 7 and June 29, 2023, Petitioner participated in 21 post-operative PT sessions. Ex. 12; Ex. 14. At the initial evaluation, the therapist noted Petitioner was very scared of engaging in therapy, and Petitioner reported pain of 7-9/10 Ex. 12 at 3. The therapy plan was for three sessions a week for eight weeks. By June 2023, Petitioner reported that her arm was feeling better and that she was exercising daily. Ex. 14 at 62. The therapist noted Petitioner had increased ROM and strength and decreased tightness. *Id.* at 63.

Petitioner had post-operative follow-up appointments on February 13, March 13, April 10, and June 12, 2023. Ex. 13 at 18-90. On February 13, 2023, Petitioner reported significant improvement and no pain. *Id.* at 41. On June 12, 2023, Petitioner again reported no pain, her physical examination was normal, and Dr. Sabonghy opined that Petitioner was "doing very well overall" with "No significant pain or dysfunction." *Id.* at 81-85.

### III.    Factual Findings and Ruling on Entitlement

#### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

4

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at \*3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at \*5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

## B. Factual Finding Regarding QAI Criteria for Table SIRVA

The only Table requirement for SIRVA that Respondent contests is the second criterion - whether the onset of Petitioner's pain occurred within 48 hours of vaccination. Response at 6; *see* 42 C.F.R. § 100.3(c)(10)(ii); *see also* 42 C.F.R. § 100.3(a)(XIV)(B) (requiring the first symptom or manifestation of onset within 48 hours of vaccination for a SIRVA injury following receipt of a flu vaccine). Respondent argues that Petitioner's delayed initial presentation of one month and nine days, along with vague onset references, are not enough to establish that pain began within 48 hours of vaccination. *Id.*

Notwithstanding Respondent's objection, I find that the delay in question is not facially unreasonable, especially in comparison to what has characterized the course of seeking treatment for many other successful claims. And it is frequently observed in SIRVA cases that claimants expect any post-vaccination pain to be transient, or not serious enough to merit evaluation by a medical professional. The record reflects that Petitioner sought treatment for her shoulder pain in a relatively timely manner (i.e., approximately one month post-vaccination).

Otherwise, the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iii)-(iv). A thorough review of the

record in this case does not reveal either a prior or current condition, pain and limited range of motion ("ROM") other than in Petitioner's injured left shoulder, and no other condition or abnormality which would explain Petitioner's symptoms. Petitioner's medical records consistently reflect her reporting immediate shoulder pain post-vaccination. Thus, and as I stated during the expedited hearing, all elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). In this case, Respondent has not offered any argument to suggest that Petitioner has failed to meet these other requirements, and my review of the record confirms that Petitioner has preponderantly established that Petitioner suffered the residual effects of her SIRVA for more than six months and that there has been no other award or settlement. Accordingly, Petitioner is entitled to compensation for her SIRVA.

## IV. Compensation to be Awarded

### A. Parties Arguments

Prior to oral argument, the parties submitted that they had agreed on an amount to be awarded for Petitioner's out-of-pocket unreimbursed expenses. Therefore, the only issue of contention remaining is what amount of past pain and suffering to award.

Petitioner seeks $160,000.00, maintaining that her treatment involved multiple doctor's appointments, an MRI, 21 physical therapy sessions, one cortisone injection, and one surgery, and that she still experiences the sequela of her SIRVA injury to this day. Br. at 17. She favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Tumolo, S.C., and Reed,* who received $170,000.00, $160,000.00, and $160,000.00, respectively for their past pain and suffering.[4] *Id.* at 23-25.

In contrast, Respondent argues that the facts and circumstances in the instant case are less severe than in any of the cases to which Petitioner has cited. However,

---

[4] *Tumolo v. Sec'y of Health & Hum. Servs.,* No. 16-343V, 2020 WL 6279711 (Fed. Cl. Spec. Mstr. Oct. 1, 2020); *S.C. v. Sec'y of Health & Hum. Servs.,* No.29-341V, 2021 WL 2949763 (Fed. Cl. Spec. Mstr. Jun. 14, 2021); *Reed v. Sec'y of Health & Hum. Servs.,* No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019).

Respondent does not offer *any* cases he believes to be more on point than those relied upon by Petitioner, nor does he even provide a number which he believes to be a more reasonable award for pain and suffering.

In her reply, Petitioner reiterates her belief that her cited cases stand as appropriate comparables to the instant case.

### A.  Legal Standards for Pain and Suffering Awards

In another decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y of Health & Hum. Servs.*, No. 19-1727V, 2022 WL 3152827 (Fed. Cl. Spec. Mstr. July 6, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[5]

### B.  Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, signed affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on February 28, 2025. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

---

[5] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Pursuant to my oral ruling on February 28, 2025 (which is fully adopted herein), **I find that $140,000.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering.**

In making this determination, I have considered the moderate nature of Petitioner's left shoulder pain and limited ROM and her good prognosis post-surgery, particularly her quick recovery. Prior to surgery, Petitioner consistently reported moderate pain and limited range of motion in her left shoulder and when the pain did not subside her doctors ordered an MRI. The results of this MRI confirmed the need for surgical intervention. Post-surgery, Petitioner consistently reported improved pain (her first PT session notwithstanding). Her post-surgery treatment also involved 21 PT sessions, at the conclusion of which Petitioner demonstrated no significant pain or dysfunction along with improved ROM and strength. Ex. 12 at 63. Approximately one year from her initial vaccination, Petitioner had essentially fully recovered from her injury and surgery. Although Petitioner has indicated in her affidavit that she still experiences some pain in her shoulder to this day, it does not appear severe enough to interfere with Petitioner's daily life activities, and Petitioner has not had to seek additional treatment for pain management.

The overall severity of the SIRVA in the instant case was not high enough to warrant $160,000.00 in damages. The cases cited to by Petitioner are distinguishable due to the greater severity of injury in those circumstances. In *Tumolo*, for example, the petitioner underwent a somewhat similar treatment course (one surgery, two steroid injections, four MRIs, 14 PT sessions) but the clinical course of treatment lasted for approximately four years. Like Ms. Luk, the petitioner's symptoms were well-resolved following surgery and PT, but the much longer course differentiates this case as more severe. *Tumolo,* 2020 WL 6279711, at *14-16.

Similarly, in *S.C.*, although the petitioner only required one surgery, which was successful at resolving the most serious reported symptoms, the petitioner required four steroid injections and 95 sessions of PT over the course of approximately three years, indicative of a more severe injury which required more aggressive management of symptoms prior to surgery. *S.C.,* 2021 WL 2949763, at *3-4.

Finally, in *Reed*, the petitioner required two steroid injections, one surgery, and 31 sessions of PT over a clinical course of approximately two years. *Reed,* 2019 WL 1222925, at 14-16. Additionally the pain experienced by the *Reed* petitioner was generally more severe than the pain in the instant case, with the petitioner consistently reporting pain levels of 6-9/10 and using words such as "searing", "intense", and "burning." *Id.* The petitioner also displayed uniquely challenging personal circumstances, with her shoulder

injury making care for her young child with ADHD autism spectrum disorder far more difficult than it had previously been. *Id.* at 16.

Respondent unhelpfully elected not to propose a counter-sum for pain and suffering, nor did he cite to *any* cases which he believes serve as better comparable fact patterns. Instead, he simply attempts to distinguish the instant case from Petitioner's cited comparables by noting the overall less-severe nature of Petitioner's injury and course of treatment. Respondent is correct in his assessment that the instant case is less-severe than those in *Tumolo, S.C.,* and *Reed,* but by not offering any comparable cases of his own, or even a simple sum that Respondent believes to be a more-reasonable pain and suffering amount, I am not inclined to deviate too far from Petitioner's proposed sum backed with comparable cases as justification.

### Conclusion

For all the reasons discussed above and based on consideration of the entire record, **I find that Petitioner's left shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $140,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[6] Finally, pursuant to the agreement of the parties, I find that $7,872.03 represents a fair and appropriate amount of compensation for Petitioner's out-of-pocket unreimbursed expenses.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $147,872.03, representing compensation for her actual pain and suffering and out-of-pocket unreimbursed expenses to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[7]

---

[6] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required.  *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master